# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**QUIANNA COCKRELL o/b/o**
**N.S.C., a minor,**

    **Plaintiff,**

                                     **Civil Action 2:18-cv-568**
                                     **Judge Algenon L. Marbley**
    v.                               **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Quianna Cockrell, on behalf of N.S.C., a minor ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") determining that N.S.C. is ineligible for Supplemental Security Income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record. For the reasons that follow, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's decision and immediately award benefits to N.S.C.

## I.    BACKGROUND

The Social Security Administration determined that N.S.C. was disabled and eligible for SSI benefits in 2002. On September 30, 2010, a supplemental needs trust was established in the name of N.S.C. with funds received from the settlement of a medical malpractice claim in New

York (the "Trust"). (R. at 30.) On August 23, 2011, the Social Security Administration received a copy of the Trust and undertook an inquiry to determine whether Trust assets qualified as a resource for purposes of determining N.S.C.'s eligibility for SSI. The field office initially determined that the Trust does not count as a resource. A regional trust reviewer for the Social Security Administration later concluded otherwise, however, finding that the Trust counted as a resource because it contained no residual beneficiary. As a result, on October 9, 2014, the Social Security Administration issued a notice informing N.S.C. that she was not entitled to benefits from February 2012 through January 2014 and that she had been overpaid SSI benefits during that period in the amount of $22,687. (*See* R. at 13.) N.S.C.'s mother requested reconsideration and on November 6, 2014, the Social Security Administration determined again that the Trust counted as a resource such that N.S.C. was not eligible for benefits. N.S.C. sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Thomas L. Wang (the "ALJ") held a hearing on March 27, 2015, at which N.S.C.'s parents, represented by counsel, appeared. (R. at 163-74.) On June 19, 2015, the ALJ issued a decision finding that the Trust counted as a resource for purposes of determining N.S.C.'s eligibility for SSI. (R. at 13-20.) Although the ALJ found, contrary to the regional trust reviewer, that the Trust does contain a residual beneficiary, he concluded it nevertheless counted because its Medicaid payback provision limited reimbursements to medical assistance payments made *during* the term of the Trust. Because the Trust assets exceeded the statutory limit of $2,000, the ALJ concluded that N.S.C. was ineligible for SSI benefits from February 2012 through January 2014 and that N.S.C. had been overpaid benefits during that period. The Appeals Council granted N.S.C.'s request for review but affirmed the ALJ's decision that the Trust counted as a resource and that N.S.C. had

been overpaid benefits. Plaintiff timely filed this action for review. (ECF No. 1.)

Plaintiff advances a single statement of error, namely, that the ALJ erred in determining that the Trust counts as a resource for determining N.S.C.'s eligibility for SSI benefits. The undersigned limits her discussion of the record to evidence bearing on this contention of error.

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court generally "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). More specifically, factual findings made by the Commissioner are reviewed under the substantial evidence standard, though "[l]egal conclusions are reviewed *de novo*." *Quinchett ex rel Wells v. Massanari*, 185 F. Supp. 2d 845, 849 (S.D. Ohio 2001), *affirmed* 185 F. Supp. 2d 845 (S.D. Ohio 2001); *see also Graley v. Comm'r of Soc. Sec.*, 646 F. App'x 414, 415 (6th Cir. 2016) ("We review the ALJ's factual findings for substantial evidence and her legal conclusions *de novo*."). For factual findings, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Furthermore, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

Finally, under sentence four of 42 U.S.C. § 405(g) the Court has the power to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." The United States Court of Appeals for the Sixth Circuit has stated that "'[i]f a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.1994)).

### III.  ANALYSIS

The undersigned finds Plaintiff's contention of error to have merit and warrant reversal and an immediate award of benefits.

A.      This Court Reviews the ALJ's Interpretation of the Trust *De Novo*

As a threshold matter, the undersigned rejects the Commissioner's position that this Court must apply the substantial-evidence standard to the ALJ's interpretation of the Trust.[1] It is well settled that the "[c]onstruction of a written contract, including the determination of whether the contract's terms are ambiguous, is a question of law[.]" *Arlington Video Prods. v. Fifth Third Bancorp*, 569 F. App'x 379, 386 (6th Cir. 2014); *see also Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996) ("Questions of contract interpretation are generally considered questions of law subject to de novo review."). As set forth above, although the ALJ's factual findings are reviewed for support by substantial evidence, "[l]egal conclusions are reviewed *de novo*." *Quinchett*, 185 F. Supp. 2d at 849; *see also Graley*, 646 F. App'x at 415 ("We review the ALJ's factual findings for substantial evidence and her legal conclusions *de novo*."); *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) ("We need not defer [] to conclusions of law, and if the Commissioner commits an error of law, we may reverse without regard to the volume of evidence in support of the factual findings."); *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 240 (E.D.N.Y. 2016) ("[T]he Commissioner's legal conclusions may be reviewed de novo without deference.") (internal quotation marks and citations omitted); *Moreira v. Shalala*, 1994 WL 75063, *5 (S.D.N.Y. Mar. 4, 1994) ("The ALJ's conclusions of law will be reviewed *de novo*.").

---

1. Although the Commissioner incorrectly asserts that Plaintiff "concedes that the substantial evidence standard governs this court's review of the ALJ's decision," (Op. 7, ECF No. 16), Plaintiff points out that a *de novo* standard applies here. *See* SOE 6, ECF No. 11 ("Legal conclusions are reviewed de novo. . . . The decision by the Commissioner in this matter is primarily a legal one in nature. . . . [A]s such this Court should perform a *de novo* review."). The undersigned agrees.

The undersigned acknowledges that some Courts, without analyzing the issue, state they are applying a substantial-evidence standard of review to an ALJ's interpretation of a trust document; yet, upon closer review, these cases actually review the ALJ's interpretation of the trust *de novo*. *See*, *e.g.*, *Stahl v. Comm'r of Soc Sec.*, No. 2:14-cv-2352, 2015 WL 5245331, at *3-7 (S.D. Ohio Sep. 9, 2015). Generally, application of a *de novo* standard of review is proper where, as here, neither the ALJ nor the Court need weigh evidence to construe a contract. Additionally, even where contract terms are ambiguous such that interpretation requires the reviewing Court to discern the parties' intent, because intent "is to be ascertained from the language of the instrument[,] evidence cannot be introduced to show an agreement between the parties materially different from that expressed by clear and unambiguous language of the instrument." *Quinchett*, 185 F. Supp. at 847 (internal quotation marks and citations omitted). As such, as this Court has previously held, "the Court can review *de novo* the question of whether the language of the trust instrument [] is sufficiently clear and unambiguous to permit the Court to divine the settlor's intention as a matter of law," and if the settlor's intention is clear, "the Court does not owe any special deference to the decision of the Commissioner." *Id.* As set forth below, the Trust at issue here must be construed pursuant to New York law, which similarly mandates that "'the intent of the parties must be gleaned from within the four corners of the instrument.'" *IRJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2nd Cir. 2003) (quoting *De Luca v. De Luca*, 751 N.Y.S.2d 766, 766 (N.Y. App. Div. 2d Dep't 2002). Here, because the issue before the Court is the ALJ's interpretation of the Trust, the undersigned applies a *de novo* standard of review.

6

## B. The ALJ Erred in Interpreting the Trust

The federal Supplemental Security Income program prescribed by 42 U.S.C. § 1381 *et seq.*, provides cash assistance to disabled persons whose monthly income or overall available resources do not exceed certain maximum amounts set forth in the statute and regulations. *See* 42 U.S.C. § 1382 and 20 C.F.R. § 416 subparts D and K (setting forth income limits) and 20 C.F.R. § 416.1205 (setting forth resource limits). If the Social Security Administration determines that either an individual's available resources or monthly income exceed the prescribed limits, he or she is ineligible for SSI. 42 U.S.C. § 1382.

Trusts created on or after January 1, 2000, using an individual's own assets are generally counted as a resource when considering an individual's eligibility for SSI. 42 U.S.C. § 1382(b)(e); POMS SI 01120.201.[2] Certain trust assets, including those in a "special needs trust," are not considered countable resources. 42 U.S.C. § 1396p(d)(4)(A). A special needs trust is defined as follows:

> A trust containing the assets of an individual under age 65 who is disabled . . . and which is established for the benefit of such individual by the individual, a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this title.

---

2. The Social Security Administration's Program Policy Information Site ("POMS") is a handbook for internal use by Social Security Administration employees that contains "publicly available operating instructions for processing Social Security claims." *Washington Dep't of Soc. Svs. v. Keffeler*, 537 U.S. 371, 385 (2003). As the Supreme Court of the United States has recognized, although "these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect[.]" *Id.*; *see also Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 326, 340 (6th Cir. 1989) (describing the POMS as persuasive authority).

7

42 U.S.C. § 1396p(d)(4)(A). Thus, assets in a special needs trust are not counted as resources if the trust meets all three requirements of Section 1396p(d)(4)(A), meaning it: (1) contains the assets of an individual under the age of 65 and who is disabled; (2) is established for the benefit of such individual by a parent, grandparent, legal guardian, or a court; and (3) provides that the State will receive all amounts remaining in the trust upon the death of the individual up to an amount equal to the total medical assistance paid on behalf of the individual under a state medical plan. *Id.* The Social Security Administration's POMS SI 01120.203(B)(1)(h) elaborates that to qualify as a special needs trust, "Medicaid payback may not be limited to any particular period of time, *i.e.*, payback cannot be limited to the period after establishment of the trust." POMS SI 01120.203(B)(1)(h).

Here, there is no dispute that the Trust meets the first two requirements to qualify as an excluded asset because it (1) contains assets of N.S.C., a person under the age of 65 who is disabled; and (2) it was established for the benefit of N.S.C. by a court following a medical malpractice settlement. The parties likewise agree that the Trust provides that upon N.S.C.'s death, the State will receive remaining Trust assets to reimburse for medical payments paid on behalf of N.S.C. The ALJ, however, concluded that the Trust limits such reimbursements to medical payments made *during* the "term of the trust." (R. at 18.) Because "Medicaid payback may not be limited to any particular period of time" for a trust to qualify as a special needs trust, the ALJ concluded that the Trust is a countable resource. (*Id.*) The undersigned disagrees with the ALJ's interpretation and finds that the Trust's Medicaid payback provision is not limited to the term of the trust.

Before turning to the specific language of the Trust, the undersigned notes that by its terms, the Trust "is to be governed, construed, and administered according to the laws of the State of New York." (Trust, Article IX, Paragraph (d), R. at 76.) Under New York Law, contract interpretation is a question of law for the Court to resolve. *Int'l Multifoods Corp. v. Comm. Union Ins. Co.*, 309 F.3d 76, 83 (2nd Cir. 2002) (applying New York law). "Where a 'contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence.'" *IRJE Corp.*, 329 F.3d at 314 (quoting *De Luca*, 751 N.Y.S.2d at 766). "In assessing ambiguity, [courts] consider the entire contract to 'safeguard against adopting an interpretation that would render any individual provision superfluous.'" *Id.* (quoting *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir. 1993)). "Contract terms are not ambiguous if they 'have a definite and precise meaning and are not reasonably susceptible to differing interpretations.'" *Id.* (quoting *Sayers*, 7 F.3d at 1095). Finally, "[w]hether a contract is ambiguous is a question of law that [courts] review *de novo*." *Id.* (citing *Sayers*, 7 F.3d at 1095).

Here, the undersigned concludes that the Trust is clear and unambiguous and that its Medicaid payback provision is not limited to the term of the Trust. Rather, the provision governing distribution of Trust assets upon N.S.C.'s death clearly mandates the trustee to reimburse "any . . . Medicaid entity" that provided Medicaid or similar benefits "for the total value of all Medical Assistance . . . paid on behalf of [N.S.C.]." (Trust, Article V, Paragraph (b), R. at 68.) Specifically, the distribution clause reads in full as follows:

ARTICLE V – THE TERMINATION OF THE TRUST

b.    After the death of the Beneficiary, and after payment of and only of administrative expenses, accountings and state and federal taxes due on the Trust,

> the Trustee *shall distribute* the property, including income and principal, then remaining in this Trust as follows:
>
> i. DSS or any other appropriate Medicaid entity of any city, county, state, federal or other governmental agency, within or without the State of New York, *shall be reimbursed for the total value of <u>all</u> Medical Assistance*, if any, *paid on behalf of the Beneficiary*, consistent with Federal and New York State Law. If the Beneficiary received Medical Assistance in more than one city, county or state, then the amount distributed to each city, county, or state shall be based on the proportionate share of the total amount of Medical Assistance paid by all cities, counties, or states on behalf of the Beneficiary[.]

*Id.* (emphasis added).

This provision clearly mandates reimbursement "for the total value of <u>all</u> Medical Assistance" payments made on N.S.C.'s behalf, without any limitation as to when such payments were made. *Id.* The last sentence in the at-issue provision, which mandates that if N.S.C. "received Medical Assistance in more than one city, county, or state, then the amount distributed . . . shall be [prorated]," confirms this interpretation. *Id.* This provision—which contains no temporal limitations—does not require prorated distribution only if N.S.C. received Medical Assistance in more than one city, county, or state *during the term of the trust*. Rather, it contemplates prorated distributions to all payors across cities, counties, and states, regardless of when they made payments. Thus, contrary to the ALJ's conclusion, the Medicaid payback provision is not limited to payments made during the term of the Trust.

In reaching a different conclusion, the ALJ relied on a notice provision in the Trust to conclude that the Medicaid payback provision is limited to the term of the trust. Specifically, the ALJ relied on the following provision:

> This trust shall cease and terminate at the death of the Beneficiary. The Trustee *shall notify* the Court, DSS by certified or registered mail return receipt requested to the attention of General Counsel of HRA . . . and any other appropriate Medicaid

10

> entity within or without the State of New York from which the Beneficiary may have received Medical Assistance under any Medicaid program *during the term of this Trust*, of the death of the Beneficiary.

(Trust, Article V, Paragraph (a), R. at 67) (emphasis added). Significantly, the ALJ failed to even acknowledge the distribution provision set forth above in assessing whether the Medicaid payback provision was limited in time. (R. at 18.) This notice provision, however, is just that—a notice provision. By its clear and unambiguous terms, it governs to whom notice of N.S.C.'s death must be given and how, not to whom Medicaid reimbursements must be made. Although notice must be provided to all entities that made Medicaid or similar payments "during the term of the trust," (*id.*), the distribution clause set forth above clearly mandates that any payors of Medicaid or similar benefits "shall be reimbursed for the total value of <u>all</u> Medical Assistance [] paid on behalf of [N.S.C.]." (Trust, Article V, Paragraph (a), R. at 67) (emphasis added). Because the Trust does not limit Medicaid reimbursements, explicitly or implicitly, to payments made during the term of the Trust, the ALJ erred in concluding otherwise.

The Commissioner posits that the ALJ's reading of the trust is reasonable because "it makes [no] sense to reimburse a state agency for Medicaid payments without notifying it" of the beneficiary's death. (Op. 6, ECF No. 16.) The undersigned disagrees. Providing notice and making distributions are different. In this case, Plaintiff offers a reasonable explanation for why the notice provision requires notice of N.S.C.'s death only to entities that made Medicaid payments during the term of the Trust, namely, that entities that made payments prior to enactment of the Trust were reimbursed from the settlement proceeds, making formal notice of N.S.C.'s death to them unnecessary, particularly because the Trust also clearly protects whatever remaining right to reimbursement they still have. (SOE 11, ECF No. 11.) But this Court need

11

not make a factual finding as to why the notice provision contains a temporal limitation. Rather, it need only discern the parties' intent from the clear and unambiguous contract terms. Here, the Trust's clear and unambiguous language demonstrates that although notice of N.S.C.'s death must be provided to entities that made Medicaid payments during the term of the Trust, the trustee "*shall*" distribute remaining assets to "*any*" entity that made Medicaid payments to reimburse such entity "for the total value of *all* Medical Assistance [] paid on behalf of the [N.S.C.]" without limitation to when such payments were made. (Trust, Article V, Paragraph (a), R. at 67) (emphasis added).

The Commissioner posits that failing to limit the distribution clause to the term of the Trust "would render the phrase 'during the term of this Trust' [in the notice provision] mere surplusage." (Op. 6, ECF No. 16.) The undersigned disagrees. Again, notice and distributions are different, and Plaintiff has offered a reasonable explanation for the temporal limitation included in the notice provision. Moreover, the ALJ's reading would require this Court to insert a temporal limitation into the distribution clause that the parties chose to omit. The undersigned declines to rewrite the Trust in a way that departs from the settlors' intention as evidenced by the Trust's clear and unambiguous terms.

Finally, even if the undersigned were to find ambiguity based upon the Trust's inclusion of a temporal limitation in the notice provision, review of the remainder of the trust resolves any such ambiguity in Plaintiff's favor. *See Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industries*, 784 F.3d 78, 878 (2d Cir. 2015) (under New York law, the parties' intent is "discerned from the four corners of the document itself" where possible). As discussed above, New York law requires a trust to be interpreted in such a way to give effect to the intent of the

settlor.  *See*, *e.g.*, *Matter of Chase Manhattan Bank*, 6 N.Y.3d 456, 460 (N.Y. Ct. App. 2006) ("We are to ascertain the intention from the words used and give effect to the legal consequences of that intention when ascertained.").  Here, the remaining provisions of the Trust foreclose all doubt that the parties intended that the Trust not interfere with N.S.C.'s eligibility for public assistance benefits such as SSI.  Article II, Paragraph (a) of the Trust states: "The purpose of the Trust is that the Trust's assets be used to supplement, not supplant, impair or diminish, any benefits or assistance by any Federal, State, County, City or other governmental entity for which the Beneficiary may otherwise be eligible."  (R. 63-64.)  Consistently, Article III, Paragraph (c), states: "It is the intentions of all parties hereto that no part of the corpus of the trust created herein shall be used to supplant or replace public assistance benefits of any county, state, federal or other governmental agency which has a legal responsibility to persons with disabilities."  (R. at 34.)  Accordingly, even if the Trust's notice provision were found to create ambiguity, the undersigned would nevertheless construe the Trust in accordance with the settlors' intent as revealed in the foregoing provisions, which means interpreting the distribution clause to require payback to all entities regardless of when Medical Assistance payments were made, which, incidentally, is precisely what Article V, Paragraph (b) requires.  As such, it is **RECOMMENDED** that Plaintiff's contention of error be **SUSTAINED**.

## IV. CONCLUSION

Due to the error outlined above, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's decision and award benefits to N.S.C.

## V. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

       /s/ *Chelsey M. Vascura*
       CHELSEY M. VASCURA
       UNITED STATES MAGISTRATE JUDGE